UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 24cr10022 |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| CHARLES UCHENNA NWADAVID, | ) | Count One: Mail Fraud |
| | ) | (18 U.S.C. § 1341) |
| Defendant | ) | |
| | ) | Count Two: Money Laundering, Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1956(a)(1)(B)(i) and 2(b)) |
| | ) | |
| | ) | Count Three: Money Laundering, 18 U.S.C. § 1956(a)(1)(B)(i) |
| | ) | |
| | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. The defendant, Charles Uchenna Nwadavid ("NWADAVID"), lived in Nigeria.

2. Victim 1 lived in Lawrence, Massachusetts.

3. Victim 2 lived in Scotch Plains, New Jersey.

4. Victim 3 lived in Florida.

5. Victim 4 lived in Plymouth, Massachusetts.

6. Victim 5 lived in Peabody, Massachusetts

7. Victim 6 lived in Great Bend, Kansas.

8. Bitcoin of America was a cryptocurrency exchange headquartered in Chicago, Illinois.

9. LocalBitcoins was a peer-to-peer bitcoin marketplace based in Helsinki, Finland.

10. "Romance scams" recruited victims through advertisements for online relationships on dating or social media websites. Individuals perpetuating romance scams created fictitious profiles and then used them to gain victims' trust through a purported romantic relationship. The perpetrators then directed their victims to send money or to conduct financial transactions involving other victims' money under false pretenses.

11. Individuals engaged in online fraud, including romance scams, recruited "money mules" to receive, withdraw, and transfer proceeds of criminal activity. Money mules either used their own bank accounts or opened bank accounts to conduct these financial transactions. While some money mules understood (or were willfully blind to the fact that) they were receiving criminal proceeds, others believed that there was some legitimate purpose to the financial transactions.

12. Bitcoin was a type of virtual currency, circulated over the Internet as a form of value. Bitcoin was not issued by any government, bank, or company, but rather was generated and controlled through computer software operating via a decentralized, peer-to-peer network.

Overview of the Scheme to Defraud

13. Beginning by at least in or about 2016 and continuing through at least in or about September 2019, NWADAVID participated in romance scams that tricked victims into sending money to Bitcoin wallets that he controlled.

14. As part of the scheme, and in an effort to conceal his role as the recipient of the victims' funds, NWADAVID used a romance scam victim and money mule, Victim 1, to receive funds from other victims, including Victims 2, 3, 4, 5, and 6, in her personal bank accounts at Merrimack Valley Bank, TD Bank, and Bank of America. NWADAVID then tricked Victim 1 into passing her own money and the other victims' funds to him through cryptocurrency

transactions, and accessed accounts in Victim 1's name from overseas to transfer the victims' funds to himself.

## Execution of the Scheme to Defraud

15. In or around 2016, Victim 1 met an individual online she believed was named Williams Moore ("Moore"). Victim 1 communicated with "Moore" over email and by phone but never met him. Victim 1 thought that she was in a relationship with "Moore". Victim 1 sent thousands of dollars of her own money to "Moore".

16. During their online relationship, "Moore" instructed Victim 1 to open a cryptocurrency account at Bitcoin of America and to wire to that account funds that she received from other victims. NWADAVID then accessed Victim 1's Bitcoin of America account and wired those funds to Bitcoin addresses that NWADAVID controlled.

17. Between approximately in or about January 2019 and in or about June 2019, Victim 2 sent approximately $896,000 to Victim 1. Victim 2 believed the money was for her purported boyfriend, whom she had met online and whom she knew by the name Manuel Sykes ("Sykes"). Victim 2 met "Sykes" online in or about December 2018 and communicated with him over emails and text messages. Victim 2 never met "Sykes" in person, but "Sykes" requested money from her for a variety of purported emergencies.

18. In or around 2018, Victim 3 met an individual online she believed was named Edward Nowak ("Nowak"). "Nowak" told Victim 3 that he was going to Cyprus for work and requested that Victim 3 send money to Victim 1's bank account. "Nowak" told Victim 3 that Victim 1 was the manager of an oil business. Victim 3 received a call from an individual informing her that "Nowak" had been injured in an "oil rig" fire. "Nowak" informed Victim 3 that Bitcoin needed to be sent to the hospital to pay his medical bills. Between approximately in or about May

and in or around December of 2018, Victim 3 sent at least approximately $235,050 to Victim 1.

19. In or around June 2018, Victim 4 met "Nowak" on a dating site and believed he was her boyfriend. "Nowak" also told Victim 4 he worked in Cyprus, and Victim 4 also received a call informing her that "Nowak" was injured on an oil rig. Between in or about June 2018 and in or about February 2018, Victim 4 sent approximately $276,000 to Victim 1. Victim 4 believed Victim 1 was "Nowak's" agent.

20. In or around March 2017, Victim 5 met an individual online she believed was named "Moore". Victim 5 communicated with "Moore" through email but never met him. Victim 5 thought that she was in a relationship with "Moore" and considered him to be her boyfriend.

21. During their online relationship, "Moore" instructed Victim 5 to send money to Victim 1, among other recipients. Between approximately on or about August 10, 2017 and on or about April 19, 2018, Victim 5 sent approximately $230,243 at "Moore's" direction.

22. In or around April 2018, Victim 6 met an individual online she believed was named Clarence Manning ("Manning"). "Manning" told Victim 6 that he inherited $2 million dollars from his father but that he needed to go to Spain to receive the inheritance. "Manning" then told Victim 6 that he was hospitalized overseas and thereafter began asking her for money. Victim 6 sent at least approximately $239,100 to Victim 1.

23. Between approximately in or about June 2017 and in or about September 2019, NWADAVID tricked Victim 1 into transferring at least approximately $2.5 million that Victim 1 received from Victims 2 through 6 and others to her Bitcoin of America account. NWADAVID then transferred approximately 210 Bitcoin from Victim 1's Bitcoin of America account, through intermediary accounts, to two accounts NWADAVID controlled at LocalBitcoins, one registered in his own name and one registered in Victim 1's name.

## COUNT ONE
## Mail Fraud
## (18 U.S.C. § 1341)

The Grand Jury charges:

24. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 23 of this Indictment.

25. On or about January 31, 2019, in the District of Massachusetts, and elsewhere, the defendant,

## CHARLES UCHENNA NWADAVID,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, a $15,000 check written by Victim 6 and payable to Victim 1.

All in violation of Title 18, United State Code, Section 1341.

COUNT TWO
Money Laundering, Aiding and Abetting
(18 U.S.C. §§ 1956(a)(1)(B)(i) and 2(b))

The Grand Jury charges:

26. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 23 of this Indictment.

27. On or about February 15, 2019, in the District of Massachusetts and elsewhere, the defendant,

CHARLES UCHENNA NWADAVID,

did willfully cause another to conduct and attempt to conduct a financial transaction, to wit, the transfer of $14,961.35 from the Victim 1's Merrimack Valley account to Victim 1's Bitcoin of America account, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2(b).

## COUNT THREE
### Money Laundering
### (18 U.S.C. §§ 1956(a)(1)(B)(i))

The Grand Jury charges:

28. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 23 of this Indictment.

29. On or about February 15, 2019, in Nigeria and elsewhere, the defendant,

## CHARLES UCHENNA NWADAVID

did conduct and attempt to conduct a financial transaction, to wit, the transfer of $4.07866 Bitcoin to a cryptocurrency wallet ending in U9YV, knowing that the property involved in such transaction represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

30. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1341, set forth in Count One, Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2, set forth in Count Two, and Title 18, United States Code, Section 1956(a)(1)(B)(i), set forth in Count Three, the defendant,

**CHARLES UCHENNA NWADAVID,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

31. If any of the property described in Paragraph 30, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 30 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
MACKENZIE A. QUEENIN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: January 23 , 2024
Returned into the District Court by the Grand Jurors and filed.

Thomas F. Quinn  1/23/24 @ 2:15pm.
_____
DEPUTY CLERK