UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 24-cr-10022-LTS

UNITED STATES OF AMERICA

v.

UCHENNA NWADAVID

## ORDER ON GOVERNMENT'S MOTION FOR DETENTION

HEDGES, M.J.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 756 (1987). This case is not such an exception. Defendant Charles Uchenna Nwadavid is charged with one count of mail fraud in violation of 18 U.S.C. § 1341, one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of aiding and abetting money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2(b). Mr. Nwadavid, a Nigerian national, was arrested in the Northern District of Texas on April 7, 2025 pursuant to an arrest warrant issued by this District. Docket No. 10 at 2. Mr. Nwadavid appeared before a Texas magistrate judge for an initial appearance, at which time the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (f)(2)(B). *Id.* at 6. Mr. Nwadavid waived his Rule 5(c) identity hearing and requested a detention hearing in the District of Massachusetts. *Id.* at 2. I held a hearing on the government's motion for detention on May 22, 2025. Docket No. 19. The government argued that there was a serious risk that Mr. Nwadavid would flee, such that a detention hearing was warranted pursuant to 18 U.S.C. § 3142(f)(2)(A).[1]

---

[1] The government did not, at that time, argue that there was a serious risk that Mr. Nwadavid would obstruct or attempt to obstruct justice under 18 U.S.C. § 3142(f)(2)(B).

I found that a detention hearing was warranted, and the parties proceeded by proffer. The government argued that no conditions or combination of conditions would reasonably assure Mr. Nwadavid's appearance as required. *See* 18 U.S.C. § 3142(f). Mr. Nwadavid argued that certain conditions, including appointing his aunt as a third-party custodian, home detention with location monitoring, and surrendering his passport, would suffice. Following the hearing, I took the matter under advisement. After careful consideration of the evidence, the parties' arguments at the hearing, and the pretrial services report submitted by the U.S. Office of Probation and Pretrial Services ("Probation Office"), I find that the government has failed to show that no condition or combination of conditions will reasonably assure the appearance of Mr. Nwadavid as required. Accordingly, I order that Mr. Nwadavid be released on conditions, as further set forth below.

I.   **LEGAL STANDARD**

The Bail Reform Act of 1984 "carefully limits the circumstances under which detention may be sought." *Salerno*, 481 U.S. at 756; *see United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that [the Bail Reform Act] clearly favors nondetention."); *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) ("[I]t is only a 'limited group of offenders' who should be denied bail pending trial." (quotation omitted)). To detain a defendant pending trial, the government must establish (a) by clear and convincing evidence, the defendant is a danger to the community, and no set of conditions can reasonably assure the safety of the community; or (b) by a preponderance of the evidence, the defendant poses a serious risk of flight, and no set of conditions can reasonably assure the defendant's appearance as required. *See* 18 U.S.C. § 3142(e), (f); *United States v. Patriarca*, 948 F.2d 789, 791-93 (1st Cir. 1991).

"Because the law … generally favors bail release, the government carries a dual burden in seeking pre-trial detention." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *see*

*United States v. Cotto*, No. 3:13-cr-30023-MAP, 2013 WL 4411264, at *1 (D. Mass. Aug. 14, 2013) (describing two-step process).  First, the government may move for detention only "when a defendant has been charged with an offense enumerated in the Act for which Congress has determined that detention is warranted."  *Cotto*, 2013 WL 4411264, at *1.  The court may not hold a detention hearing unless one of the conditions authorizing a hearing under 18 U.S.C. § 3142(f) exists.  *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present...."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (explaining that a motion for detention "is permitted only when the charge is for certain enumerated crimes [under § 3142(f)(1)] … or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice [under § 3142(f)(2)]"); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) ("[T]he requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." (quotation omitted)).

"The § 3142(f) categories are not mere incantations that will conjure a hearing upon their simple utterance."  *United States v. Subil*, No. 2:23-cr-00030-TL, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023).  Instead, "[t]he Act requires that the Government make a factual showing to justify why it should be given a shot at detention."  *Id.* (citing *United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("[A] detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish.")).  As such, "Section 3142(f) serves an important gate-keeping function by preventing even the opportunity to seek detention in all but a certain, narrow subset of cases."  *Id.* (cleaned up).  If none of the § 3142(f) conditions apply, the government has not satisfied its initial burden, and the defendant must be released.  *See Ploof*, 851 F.2d at 11.

3

If the government establishes that one or more of the § 3142(f) conditions apply, it must then establish that no set of conditions will reasonably assure the defendant's appearance as required or the safety of any other person or the community. 18 U.S.C. § 3142(c); *Shakur,* 817 F.2d at 195 ("The burden of proof is on the government to prove the absence of such conditions"). The court must impose the least restrictive conditions necessary to provide those reasonable assurances. 18 U.S.C. § 3142(c). When determining if release is appropriate, the court must consider (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence; (iii) the defendant's history and characteristics; and (iv) the nature and seriousness of the danger posed. 18 U.S.C. § 3142(g). "Doubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

Under certain circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no combination of conditions will reasonably assure the defendant's appearance as required or the safety of any other person or the community. *See* 18 U.S.C. § 3142(e)(2), (3). The defendant may, however, rebut the presumption with "some evidence" demonstrating that he or she does not present a risk of danger or nonappearance. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). The burden of production to rebut the presumption is "not a heavy one to meet," *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986), and regardless of whether the defendant presents any rebuttal evidence, the presumption is considered together with the factors listed in § 3142(g), *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990) (explaining that, when rebutted, the presumption "continues to operate as one factor to be considered by the court in determining whether the defendant must be detained"). The burden of persuasion always rests with the government. *Dillon*, 938 F.2d at 1416. Because none of the

4

circumstances set forth in 18 U.S.C. § 3142(e) are present here, there is no rebuttable presumption.

"Because of the interference of pretrial detention with the important and fundamental right of liberty, despite the presumption of innocence pending trial, this Court will not make … a finding [that detention is warranted] lightly." *United States v. Powell*, 813 F. Supp. 903, 906 (D. Mass. 1992) (cleaned up). Accordingly, in deciding whether to detain or release Mr. Nwadavid, I remain mindful of *Salerno*'s mandate that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 756.

## II.    EVIDENCE RELEVANT TO DETENTION[2]

Mr. Nwadavid is 35 years old and was born in Nigeria. Most of Mr. Nwadavid's immediate family resides in Nigeria, including his wife of nearly six years, his two young sons, his mother, and five siblings. He has two aunts, one uncle, and nine cousins who live in Texas. If released, Mr. Nwadavid proposes that he will reside in Texas with his maternal aunt and her husband and three adult children. Mr. Nwadavid's maternal aunt, a Doctor of Nursing and healthcare executive who has worked as a Registered Nurse for over 20 years, is willing to serve as a third-party custodian for Mr. Nwadavid. His aunt has lived in the United States for approximately 30 years and owns her home in Texas. While she works out of the home on most days, she is home before 8:30 a.m. and after 6:15 p.m. during the week and does not have any requirements for work-related travel. Further, if released, Mr. Nwadavid reports that his wife and children plan to visit him in Texas.

---

[2] Much of this personal history is derived from the Pretrial Services Report submitted by the Probation Office, which is not in the public record and is in the custody of the Court. Much of this information was, however, discussed in open court during the detention hearing.

His maternal aunt, who has known Mr. Nwadavid since childhood, submitted a letter in support of his release, attesting to his character, and agreeing to ensure that Mr. Nwadavid abide by conditions of release set by the Court and to appear in court as directed. Docket No. 18-1 at 1. She also appeared in Court by Zoom for a continued detention hearing held on May 28, 2025. Numerous other letters to the court describe Mr. Nwadavid as a dependable and mature individual. *See* Docket No. 18-1. He is further described as a kind and attentive husband and father. *Id.* Mr. Nwadavid is described as a mentor to his younger siblings, his employees, and members of his community. *Id.*

Mr. Nwadavid has owned a family real estate business company in Nigeria since 2016. He previously worked as a network marketer and has experience selling and renting properties. Mr. Nwadavid received a bachelor's degree in accounting in Nigeria in 2015 and a certification from Columbia University in 2023 for Construction Project Management.

Mr. Nwadavid reports some international travel. He last traveled to Dubai in 2019 for three weeks for his honeymoon. He also reports traveling to Ghana, South Africa, and the UAE.[3] Mr. Nwadavid has visited the United States on two prior occasions, in 2018 and 2019, to visit his family. As explained further below, Mr. Nwadavid was attempting to visit family in Texas, supported by what he believed to be a valid tourist visa, when he was arrested on April 7, 2025.

On January 23, 2024, Mr. Nwadavid was charged by Indictment with one count of mail fraud in violation of 18 U.S.C. § 1341, one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of aiding and abetting money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2(b). *See* Docket No. 1. The Indictment alleges that "in or about

---

[3] At the detention hearing, the government also proffered evidence that Mr. Nwadavid traveled to Mauritius in 2018. *See* Docket No. 17-4 at 2.

2016 and continuing through at least in or about September 2019, [Mr. Nwadavid] participated in romance scams that tricked victims into sending money to Bitcoin wallets that he controlled." *Id.* at ¶ 13.  Specifically, the Indictment alleges that Mr. Nwadavid "used a romance scam victim and money mule, Victim 1, to receive funds from other victims" and then "tricked Victim 1 into transferring at least approximately $2.5 million that Victim 1 received from [other victims] to her Bitcoin of America account." *Id.* at ¶¶ 14, 23.  The Indictment alleges that Mr. Nwadavid "then transferred approximately 210 Bitcoin from Victim 1's Bitcoin of America account, through intermediary accounts, to two accounts [Mr. Nwadavid] controlled at LocalBitcoins, one registered in his own name and one registered in Victim 1's name." *Id.* at ¶ 23.

In April 2025, Mr. Nwadavid traveled on a tourist visa from the United Kingdom to Dallas, Texas for a three-week trip during which he planned to visit his maternal aunt and other family in Texas.[4]  *See* Docket No. 17-2.  At the detention hearing, the government reported that upon his arrival in the United Kingdom, on a layover during his trip to Texas, the government learned that he was traveling to the United States and was subject to an arrest warrant pursuant to the instant Indictment, and that at some point prior to his arrival to the United States, his tourist visa was revoked.  *See* Docket No. 17-1.  Unbeknownst to Mr. Nwadavid until he was arrested, he was granted entry into the United States pursuant to the Significant Public Benefit Parole program "per [the] fed[eral] arrest warrant," which the government asserts admitted him into the United States for the sole purpose of prosecution.  *See* Docket No. 17-2.  The government confirmed that there was no evidence that Mr. Nwadavid entered the United States with an understanding that he was entering the country pursuant to anything other than a valid tourist

---

[4] Mr. Nwadavid obtained a tourist visa to travel to the United States in May 2023. *See* Docket No. 17-1.

7

visa.  On April 6, 2025, United States Customs and Border Protection ("CBP") lodged an immigration detainer against Mr. Nwadavid transferring his custody for the "completion of [a] proceeding or investigation."  Docket No. 17-3.  On April 7, 2025, upon his arrival to the United States, Mr. Nwadavid was arrested and detained in Texas.  Docket No. 10 at 2; Docket No. 17-2.  Mr. Nwadavid is not presently in removal proceedings.

Mr. Nwadavid has no criminal history.  He reports minor physical health problems and no history of mental health concerns or substance use, other than occasional social alcohol use.

## III. ANALYSIS

### A. Applicability of 18 U.S.C. § 3142(f) Conditions

The government moved for a detention hearing under 18 U.S.C. § 3142(f)(2)(A), asserting that there is a serious risk that Mr. Nwadavid will flee.  The government must establish this by a preponderance of the evidence by presenting "concrete information not mere conclusory allegations."  *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (cleaned up); *see Patriarca*, 948 F.2d at 791-93.  Although "[t]he BRA does not offer guidance as to how a court should determine whether a defendant poses a 'serious' risk of flight … courts have concluded that Section 3142(f)(2)(A) requires more of the government than Section 3142(g)'s 'risk of nonappearance' showing that is more often addressed in detention hearings."  *United States v. Lopez-Canseco*, 3:25-cr-30034-MGM, Docket No. 16 at 3 (D. Mass. May 15, 2025) (Robertson, J.) (cleaned up); *see Figueroa-Alvarez*, 681 F. Supp. 3d at 1138 ("[A] 'serious risk of flight' … is a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision.").

Here, the government argued that there is a serious risk that Mr. Nwadavid will flee because he has limited ties to the United States: he is a Nigerian citizen, his livelihood and immediate family are in Nigeria, he owns no property in the United States, and he has only

8

travelled here on two prior occasions—the most recent of which was in 2019. The government also pointed to the presence of an ICE detainer.[5] Furthermore, the government asserted that Mr. Nwadavid has incentive to flee because he is facing a maximum sentence of 20 years, and he has the means to do so because of his access to substantial capital, including the cryptocurrency that is the subject of the instant offense.

I find that the government met its burden by preponderance of the evidence that there is a serious risk that Mr. Nwadavid will flee, such that a detention hearing was warranted. Because there are grounds for conducting a hearing under 18 U.S.C. § 3142(f), I must consider factors under 18 U.S.C. § 3142(g) to determine whether there are any conditions of release that will reasonably assure Mr. Nwadavid's appearance as required and the safety of any other person and the community.

### B. Analysis of Factors Under 18 U.S.C. § 3142(g)

#### i. *Nature of the Offense*

Mr. Nwadavid is charged with one count of mail fraud, one count of money laundering, and one count of aiding and abetting money laundering, in connection with Mr. Nwadavid's alleged involvement in romance scams between 2016 and 2019 that tricked victims into sending money to Bitcoin wallets through a money mule, which was ultimately sent to Bitcoin accounts

---

[5] "[T]he fact that ICE may involuntarily remove a defendant does not establish their eligibility for pretrial detention as a serious flight risk under section 3142(f)(2)(A)." *United States v. Ibarra*, No. 2:24-mj-00385-KFW-1, 2025 WL 27474, at *3 (D. Me. Jan. 3, 2025); *see United States v. Lopez*, No. 23-cr-10269-AK, 2023 WL 8039318, at *3 (D. Mass. Nov. 20, 2023) (concluding that the BRA is concerned with volitional nonappearance and that the possibility of "involuntary deportation – by itself – does not justify detention"); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (same); *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (same); *United States v. Soriano Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019) (same); *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) (noting that "the plain import of the term 'flight' [in the Bail Reform Act] connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction.").

that Mr. Nwadavid allegedly controlled. If convicted, Mr. Nwadavid faces a maximum penalty of 20 years imprisonment and up to $500,000 in fines, or twice the gross gain to Mr. Nwadavid or gross loss to the victims, whichever is greater. According to the government's analysis of the Guidelines Sentencing Range, Mr. Nwadavid faces 87 to 108 months of incarceration if he is convicted. Docket No. 17-4 at 5. These substantial potential penalties create an incentive for Mr. Nwadavid to flee and weigh against his release.

### ii. *Weight of the Evidence*

At the detention hearing, the government summarized electronic evidence it asserts ties Mr. Nwadavid to the romance fraud scheme charged in the Indictment. The government argued that on multiple occasions, Victim 1's Bitcoin account was accessed near in time and via the same IP address that Mr. Nwadavid used to access his personal iCloud account. *See* Docket No. 17-4. The government argued that this evidence ties the alleged criminal conduct to Mr. Nwadavid. The government also asserted that Mr. Nwadavid had Victim 1's contact information stored in his iCloud account and that the email address associated with the Bitcoin account that ultimately received a portion of the $2.5 million in funds routed through Victim 1's account was the same email address that Mr. Nwadavid used in his visa application to the United States. *See* Docket No. 17-4 at 4.

The government did not present any evidence of direct communications between Mr. Nwadavid and any of the alleged victims. Nor did it present any evidence that Mr. Nwadavid instructed any of the victims to send money to Bitcoin accounts that he allegedly controlled. Nevertheless, the government has presented substantial circumstantial evidence that Mr. Nwadavid was involved in the romance fraud scheme. Although the Bail Reform Act "permits the court to consider the nature of the offense and the evidence of guilt, the statute neither

10

requires nor permits a pretrial determination that the person is guilty." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (citing *United States v. Edson,* 487 F.2d 370, 372 (1st Cir.1973)). "These factors may be considered *only* in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community … [o]therwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Id.* (citations omitted).

### iii. History and Characteristics

In assessing this factor, I must consider Mr. Nwadavid's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). "[I]mmigration status is not a listed factor." *Santos-Flores*, 794 F.3d at 1090.

Letters submitted by Mr. Nwadavid's family, friends, and employees indicate that he is a mature and dependable person who is committed to his family and his community. Although he is a citizen of Nigeria, where his home, his immediate family and his business are located, he has substantial familial ties to Texas, including two aunts, one uncle, and nine cousins. Mr. Nwadavid's support from his family in Texas is demonstrated by letters submitted to the Court and his aunt's willingness to allow Mr. Nwadavid to live with her and to act as a third-party custodian for him. The aunt with whom he proposes to live is a securely established professional who has served the community as a nurse and hospital executive in Texas for more than 20 years. She has lived in the United States for 30 years and owns her home, where she lives with her husband and adult children. Her commitment to and support of Mr. Nwadavid is further demonstrated by her appearance via Zoom at the continued detention hearing.

Mr. Nwadavid owns a family real estate business in Nigeria and has experience buying and renting properties. He has a bachelor's degree in accounting and a certification in construction project management. Mr. Nwadavid has no criminal history, no history of non-appearance at court proceedings, and no history relating to drug or alcohol abuse.

In light of his strong familial support in Texas, his steady employment history, and his lack of a criminal record, I find that this factor weighs strongly in favor of release.

>    *iv. Dangerousness*

At the hearing, the government made no argument as to Mr. Nwadavid's dangerousness. There is no other evidence in the record that Mr. Nwadavid poses a danger to any person or to the community. Thus, I find that this factor weighs in favor of release.

>  **C. Assessment of All Factors**

After carefully evaluating the evidence in light of the criteria set forth in 18 U.S.C. § 3142, and in consideration of the intent of the Bail Reform Act that "detention prior to trial or without trial is the carefully limited exception," *Salerno*, 481 U.S. at 756, I find that the government has not established by a preponderance of the evidence that the risk of flight is so great that no conditions of release will reasonably assure Mr. Nwadavid's appearance as required. *See Patriarca*, 948 F.2d at 791-93.

At the detention hearing, the government placed an emphasis on Mr. Nwadavid's nationality and limited ties to the United States in asserting that no conditions will reasonably assure Mr. Nwadavid's appearance. While the court may consider a defendant's alienage, this factor—standing alone—does not constitute sufficient evidence that no condition or combination of conditions will reasonably assure that the defendant will flee. *See, e.g.*, *Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978) (finding insufficient basis for revocation of

12

defendant's bail following his conviction pending appeal where government relied on defendant's alienage and opportunity for flight but did not establish any inclination by defendant to flee); *Santos-Flores*, 794 F.3d at 1090 ("Alienage may be taken into account, but it is not dispositive").  I find that Mr. Nwadavid's lack of criminal history, familial ties to Texas, and the fact that his aunt—who has strong personal, professional, and civic ties to Texas—is willing to serve as a third-party custodian weigh against the risk that Mr. Nwadavid will not appear as required.

      Although Mr. Nwadavid does face the possibility of a substantial sentence if convicted, I am not persuaded by the government's arguments that Mr. Nwadavid has the means and inclination to flee that cannot be reasonably mitigated.  The government's argument that Mr. Nwadavid has the ability to obtain falsified travel documents is based on speculation that, due to the nature of the cyber-based fraud that he is accused of, he has access to individuals that can provide him with falsified documents.  However, the government conceded that it has no evidence that Mr. Nwadavid has ever attempted to obtain false travel documents.  Furthermore, the only arguments the government presented in support of its claim that Mr. Nwadavid has access to significant capital that would enable him to flee is the allegation that, at some point over six years ago, he received $1 million in cryptocurrency related to the romance scam with which he is charged, and the fact that he has retained private counsel.  I am not persuaded by either of these arguments.

      Thus, I find that the conditions of a third-party custodian, home detention with location monitoring, and the surrender of Mr. Nwadavid's passport, would sufficiently mitigate any risk of flight.  No conditions of release can guarantee a defendant's appearance.  To the contrary, the Bail Reform Act requires courts to determine whether any condition or combination of

conditions will "reasonably assure" the defendant's appearance and the safety of any other person or the community.  *See United States v. Hir*, 517 F.3d 1081, 1092 n.9 (9th Cir. 2008) ("[T]he Bail Reform Act contemplates only that a court be able to 'reasonably assure,' rather than guarantee, the safety of the community."); *United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996) (per curiam) ("Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it.").

For the reasons stated herein, I find that the imposed conditions will reasonably assure Mr. Nwadavid's appearance and the safety of any other person or the community.

## IV. <u>CONCLUSION</u>

It is hereby ORDERED that Mr. Nwadavid be RELEASED pending trial, subject to the following conditions:

1. Report to U.S. Probation and Pretrial Services as directed.

2. Maintain residence and notify U.S. Probation and Pretrial Services of any intended change of residence so that a home visit can be completed.

3. Mr. Nwadavid's maternal aunt will be appointed as a third-party custodian.

4. Surrender any passport to U.S. Probation and Pretrial Services and do not obtain any passport or other international travel documents during the pendency of this case.

5. Mr. Nwadavid shall be subject to home detention via location monitoring and is restricted to his residence at all times except as pre-approved by the Probation Office for court purposes, meetings with counsel, medical and/or mental health treatment, religious services, or other pre-approved activities.  Mr. Nwadavid shall refrain from obstructing or attempting to obstruct or tamper in any fashion with the efficiency and accuracy of any location monitoring equipment.  Mr. Nwadavid shall be responsible for the payment of any fees associated with the imposition and maintenance of location monitoring.

6. Mr. Nwadavid shall report to U.S. Probation and Pre-trial Services immediately upon his release.  Mr. Nwadavid shall immediately report to the Probation Office his travel plans to Texas, including his flight information, and where he intends to stay pending his travel.

7. Refrain from contact, direct or indirect, with any person who is or may be a victim or witness in the investigation or prosecution, including: co-defendants, unless in the presence of counsel. The government will provide a list of any witnesses that Mr. Nwadavid should refrain from contacting.

8. Report any contact with law enforcement within 24 hours.[6]

Date: May 28, 2025

/s/ Jessica D. Hedges
United States Magistrate Judge

---

[6] This Order is subject to review under the provisions of 18 U.S.C. § 3145(b) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.