UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | Crim. No. 24-cr-10022-LTS |
| v.   ) | |
| ) | |
| CHARLES UCHENNA NWADAVID  ) | |
| ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Over the past decade, romance scams have ballooned into a $3.8 billion problem, with no viable solution.[1] From at least 2016 through September of 2019, Nwadavid, in transferring the proceeds of romance scams, performed a critical role in defrauding vulnerable victims out of varying amounts— in the aggregate, they lost millions of dollars. A significant sentence is necessary to deter others inclined to participate in online schemes that victimize others. For Nwadavid's actions, the Court should impose a sentence of incarceration of 30 months, one year of supervised release, restitution in the amount of $2,145,110.16, forfeiture in the amount of $2,724,810.41, and a $300 special assessment.

I. THE OFFENSE CONDUCT

The offense conduct is set forth fully in the Pre-Sentence Report. It outlines various ways romance scam victims were deceived into sending money to Victim 1. PSR at ¶¶9-27. Each of them thought they were in a relationship. *Id.* Victim 1 also received money—over two million dollars—from other victims, including Victims 2-6. *Id.* at ¶23. Victim 1 at Nwadavid's direction

---

[1] Nasdaq 2024 Global Financial Crime Report, available at https://verafin.com/nasdaq-verafin-global-financial-crime-report/?SRC=Blog (visited September 17, 2025). Other online fraud has also grown exponentially. *See* Federal Bureau of Investigation, Public Service Announcement, "Business Email Compromise: The $55 Billion Scam", (Sept. 11, 2024), *available at* https://www.ic3.gov/ PSA/2024/PSA240911 (visited September 17, 2025).

and/or Nwadavid transferred those funds to Victim 1's Bitcoin of America account. *Id.* Nwadavid then transferred Bitcoin from Victim 1's Bitcoin of America account to accounts he controlled at LocalBitcoins. *Id*. at ¶24.

Notably, Nwadavid had the phone numbers of Victims 1, 3, and 4 saved in his Google Contacts. *Id.* at ¶25. Further, on or about April 10, 2017, the user of the Williams Moore email account sent the defendant's personal email address a bitcoin seed phrase. *Id.* at ¶26. The seed phrase belonged to wallets that Nwadavid used to receive funds from Victim 1. *Id.* Data from a photo sent to Victim 3 during the course of the "romance" she had with "Edward Nowak" shows that it was downloaded from the same geographic location as personal photos saved in the defendant's iCloud account. PSR at ¶18.

## II.     THE GUIDELINE SENTENCING RANGE

The government agrees with the United States Probation Office's calculation of the Sentencing Guidelines set forth in the final PSR. The PSR correctly calculates the applicable total offense level of 28, which results in a Guidelines Sentencing Range of 78-97 months. PSR ¶44; Dkt. 33. Nwadavid objects to the application of the two-level vulnerable victim enhancement under §3A1.1(b). He reserved the right to do so in his plea agreement but his objection should be overruled. The Guidelines define a vulnerable victim as a victim that is "vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. §3A1.1. Romance scams exploit people, often elderly women, in their most vulnerable

moments.² Without a vulnerable victim, all romance scams would fail miserably. Stated differently, someone who is sending money under false pretenses is by definition vulnerable.

Even assuming *arguendo* that Nwadavid did not know *anything* specific about the romance scam victims, or even that they *were* romance scam victims, he knew it was important the money be converted into Bitcoin and then transferred to another Bitcoin account overseas—so victims could not easily recover it.³ At minimum—he knew that Victim 1 was dutifully taking direction from him (or, for the sake of argument, someone else) as to what to do with the money she received. He also repeatedly accessed Victim 1's Bitcoin of America account to effectuate his transactions and the transfer of funds to his LocalBitcoins account. PSR at ¶15. That is enough to show he knew *she* was vulnerable, or at the very least, that he should have known. At bottom, the defendant either affirmatively knew where the money was coming from, or he failed to ask, placing him squarely within the "should have known" category contemplated by this enhancement.

### III.   SENTENCING RECCOMENDATION

The government's recommended sentence—incarceration significantly below the low end of the Guidelines—is a reasonable and just outcome that is sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553(a) for this defendant.

---

² The Romance Scam Signs to Look Out For As Over-55s Frequently Targeted for Their Money, Vicky Shaw, *available at* https://www.independent.co.uk/news/uk/crime/romance-scams-signs-fraud-money-b2827748.html (last accessed on September 17, 2025).

³ It is entirely possible that Nwadavid's role was more than that of a mere money mover, as evidenced by the photo of "Edward Nowak", the fact that victim information was saved in his Google account, and his receipt of information from the "Williams Moore" account.

### A. The Nature and Circumstances of the Offense Warrant a Sentence of 30 Months

Nwadavid was a vital player in a romance scam network over a period of years. The fact that there may be others who are also responsible for these crimes does not diminish the defendant's culpability, or the need to hold him accountable. While it may be tempting for the defendant to insinuate that romance scammers themselves are the true bad actors, romance scams would not work without individuals like Nwadavid standing ready to move money quickly. Romance scams are heartless crimes with immeasurable repercussions. They take a physical and mental toll on their victims, who often struggle with shame. Their relationships with others are forever altered. As one eighty-year-old victim stated in her impact statement, "*I now have to work at 80 years old to pay my bills but more importantly to sustain my health…I have suffered lack of sleep endless crying and physical collapse. Your criminal antics has [sic] destroyed my family relationships, work and social activities as I now have no money to give my grandchildren for college, to enjoy a restaurant meal or see a movie.*" (emphasis added).

As the offense conduct shows, this was not an isolated crime of opportunity. The defendant engaged in a sustained pattern of criminal conduct. Whatever misguided reasons motivated him— perhaps simply greed—he repeatedly made the wrong choice. He did not act out of coercion, duress, or desperation. The defendant argues he self-corrected his behavior at some point after 2019 and built a legitimate business. The government cannot disprove those assertions, but even accepting them as true, the nature and circumstances of this offense weigh in favor of a substantial incarcerative sentence. *See* 18 U.S.C. § 3553(a)(1).

### B. The Defendant's History and Characteristics Do Not Mitigate His Culpability

The defendant's history and characteristics do not mitigate the need for a significant incarcerative sentence. *See* 18 U.S.C. § 3553(a)(1). The defendant not only has a supportive family but he also reaped the benefits of an education. He reports graduating high school, college

4

and taking classes at Columbia University. *See* PSR, at ¶ 61. This is not a case of ignorance or naivety; he knew better. The fact that the defendant has two young children is not a mitigating circumstance the Court should consider. Most defendants that come before the Court have children.

### C. A Sentence of 30 Months Will Not Create Unwarranted Sentencing Disparities

The government's proposed sentence serves the purpose of avoiding unwarranted sentencing disparities. First, the government's recommended sentence falls well below the sentencing guidelines range as calculated by all parties. As the drafters of the guidelines explain, "Guideline sentences, in many instances, will approximate average pre-guidelines practice and adherence to the guidelines will help to eliminate wide disparity." U.S.S.G. Ch. 1, Pt. A § (4)(G). The government's recommendation of 30 months is well below both the Guidelines and the JSIN data.[4]

It is difficult, if not impossible, to make an apples-to-apples comparison between defendants, as each individual and the facts and circumstances surrounding every case are unique. But a brief survey of recent cases demonstrates that a sentence of 30 months will not create unwarranted disparities. *See, e.g., United States v. Chukwunonso Obiora*, 24-cr-10011-IT (defendant sentenced to 11 years incarceration for his role in receiving proceeding of business email compromises, defendant also obtained a passport through false statements); *United States v. Gustaf Njei*, 1:21-10196-FDS, (defendant sentenced to 27 months incarceration for setting up fake business to receive proceeds of BEC scheme, loss less than $500,000); *United States v. Hassan Abbas*, 20-cr-10016-LTS (defendant, an attorney, sentenced to 87 months incarceration, for his

---

[4] The government agreed to recommend a sentence of 30 months in part due to the potential impact of the magistrate judge's release decision on this prosecution.

role moving fraud proceeds in connection with business email compromises and romance scams); *United States v. Kelech Umei*, 23-cr-10013-WGY (defendant sentenced to 40 months incarceration, defendant used fake passports to open bank accounts to launder proceeds of online scams and withdraw money from accounts). The defendant's sentencing memoranda references *United States v. Amiegbe*, 21-cr-10339-IT. Notably, the government's sentencing memo in that case references a sealed filing in further support of its 9-month incarcerative recommendation. Dkt 72. That is not the case here.

### D. A Sentence of 30 Months Promotes Respect for the Law, and Provides Adequate Punishment and Deterrence

"Considerations of deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish since both attributes go to increase the expected benefits of a crime." *United States v. Zukerman*, 897 F.3d 423, 429 (2d Cir. 2018); 18 U.S.C. § 3553(a)(2). Nwadavid's crimes are both. Romance scams are not only lucrative but also extraordinarily difficult to prosecute and punish. When, as in this case, law enforcement is able to arrest and convict a culpable overseas defendant, it is vital that the sentence imposed reflect a deterrent component. Extradition from Nigeria, a hotbed for cybercrimes, is an arduous and unpredictable process that does not often result in defendants arriving in the United States. This leaves the government to rely on the chance that a target will travel, as happened here. The First Circuit has recognized that the concept of general deterrence carries particular import in arriving at the appropriate sentence in white-collar and fraud cases. *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006); *see United States v. Watt*, 707 F. Supp. 2d 149, 156-57 (D. Mass. 2010) (Gertner, J.) ("deterrence and punishment are particularly important for cybercrimes").

The unfortunate reality is that many romance scam artists will remain permanently beyond the reach of U.S. authorities. The sentence must promote deterrence for those overseas who

contemplate joining the burgeoning romance scam industry. Romance scams are successful in part because they are easy to implement. And they have become even easier to perpetuate with the use of artificial intelligence to craft narratives.[5] Logistically, scheme participants can send emails targeting thousands of potential victims each day while attempting to misdirect or relying on others to misdirect millions of dollars in funds. Those who use the internet to exploit the trust of innocent individuals looking for meaningful relationships online—and all those who conspire with them—should know that when they get caught, they will face serious consequences.

## CONCLUSION

The government respectfully requests that the Court impose a sentence of 30 months incarceration, one year of supervised release, restitution in the amount of $2,145,110.16, forfeiture in the amount of $2,724,810.41, and a $300 special assessment. The recommended sentence is sufficient, but not greater than necessary pursuant to the §3553(a) factors.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY

By:  /s/ *Mackenzie A. Queenin*
MACKENZIE A. QUEENIN
SETH B. KOSTO
ASSISTANT U.S. ATTORNEYS

Date: September 17, 2025

---

[5] AI Chatbots Are Becoming Romance Scammers (Feb. 11, 2025), *available at* https://www.mcafee.com/ blogs/privacy-identity-protection/ai-chatbots-are-becoming-romance-scammers-and-1-in-3-people-admit-they-could-fall-for-one/ (last visited September 17, 2025).

**CERTIFICATE OF SERVICE**

    I, Mackenzie A. Queenin, certify that on this 17th day of September 2025, I caused this document to be filed via the ECF system.

/s/ *Mackenzie A. Queenin*
Mackenzie A. Queenin
Assistant U.S. Attorney